UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENNIS E. JONES-EL,

        Plaintiff,                                   Case No. 07-C-0504

v.

WILLIAM POLLARD, MICHAEL BAENEN,
PETER ERICKSEN, JACK DORUFF, M. DELVAUX,
KATHLEEN BIERKE, DONNA LIEBERGEN,
LT. SWIEKATOWSKI, CAPT. BRANDT, MARK LESATZ,
LT. CAMPBELL, KEVIN POSTL, D. STEVENS,
MIKE DONOVAN, GERALD BERGE, MICHAEL MOHR,
RICHARD SCHNEITER, PETER HUIBREGTSE,
LT. BOISEN, GARY BOUGHTON, TODD OVERBO,
LT. TOM, CAPT. MASON, T. LANSING, RON EDWARDS,
CHRISTINE BEERKIRCHER, ELLEN RAY,
J. HUIBREGTSE, S. GRONDIN, SGT. HOFFMAN,
JOHN AND JANE DOE PRC MEMBERS, J. BETZ,
C.O. FINNELL, C.O. MICHELSON, C.O. SCULLION,
CINDY O'DONNELL, RICK RAEMISCH, JON LITSCHER,
MATTHEW FRANK, JOHN BETT, KEVIN POTTER,
DAN WESTFIELD, KEVIN KALLAS and DON HANDS,

        Defendants.

## DECISION AND ORDER

        Plaintiff, Dennis E. Jones-El, filed this *pro se* civil rights complaint pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. By order dated June 26, 2007, the court screened the original complaint and found it to be deficient in several respects. Therefore, the plaintiff was advised that if he wished continue this action, he should file an amended complaint on or before August 1, 2007. This matter comes before the court on the plaintiff's motion for extension of time and request to amend the complaint.

## I. MOTION FOR EXTENSION OF TIME

The plaintiff has filed a motion for extension of time asking that his September 5, 2007, amended complaint be considered as timely filed. Federal Rule of Civil Procedure 6(b) states, in relevant part,

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect...

As noted above, the plaintiff was directed to file an amended complaint on or before August 1, 2007. On August 1, 2007, the plaintiff was granted an extension of time until September 1, 2007, in which to file an amended complaint. However, the amended complaint was not filed until September 5, 2007.

As grounds for his request, the plaintiff states that the amended complaint was sent to legal aid to be typed and, therefore, additional time was required for mailing. Based on this, the court is satisfied that the reason underlying the request justifies an extension of time. Accordingly, the plaintiff's motion will be granted and, therefore, the amended complaint will be considered timely.

## II. REQUEST TO AMEND THE COMPLAINT

The plaintiff seeks to leave to file an amended complaint to cure the deficiencies in the original complaint.[1] Rule 15(a) of the Federal Rules of Civil Procedure states that leave to file an

---

[1] The court is in receipt of the plaintiff's letter regarding the mislabeling of the last page of the amended complaint. In the interest of clarity, the court will refer to the complaint as it is numbered in the Electronic Case Filing (ECF) system, with the first page of the complaint being page number 1 and the last page of the complaint being page number 42.

2

amended complaint "shall be freely given when justice so requires." The Supreme Court has explained the meaning of "freely given" as used in Rule 15(a) by stating:

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

On the other hand, a plaintiff will not be allowed to amend his complaint if such amendments would be futile. *Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993). For example, if the claims in the amended complaint could not withstand a motion to dismiss for failure to state a claim upon which relief can be granted, the court will not grant leave to file the amended complaint. *Id*. Therefore, the proposed amended complaint must next be screened pursuant to 28 U.S.C. § 1915A(a).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated

3

as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for pro se prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Id*. at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he or she was deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon the plaintiff by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**A.    Background**

The plaintiff, who is currently incarcerated at Wisconsin Secure Program Facilty (WSPF), was housed at WSPF and Green Bay Correctional Institution (GBCI) at all times relevant. All defendants are employed by the Wisconsin Department of Corrections (DOC). Defendants William

4

Pollard, Michael Baenen, Peter Ericksen, Jack Doruff, M. Delvaux, Kathleen Bierke, Donna Liebergen, Lt. Swiekatowski, Mark Lesatz, Lt. Campbell, Kevin Postl, P. Stevens, Mike Donovan and Capt. Brandt work at GBCI.

Defendants Gerald Berge, Michael Mohr, Richard Schnieter, Peter Huibregtse, Gary Boughton, Todd Overbo, Lt. Tom, Capt. Mason, T. Lansing, Christine Beerkircher, Lt. Boisen, John and Jane Doe PRC Members, Ellen Ray, J. Huibregtse, S. Grondin, Sgt. Hoffman, J. Belz, C.O. Finnell, C.O. Michelson, C.O. Scullion and Ron Edwards are employed at WSPF.

Defendants Cindy O'Donnell, Rick Raemisch, Jon Litscher, Matthew Frank, John Bett, Kevin Potter, Dan Westfield, Kevin Kallas and Don Hands work at DOC headquarters in Madison.

**Claim 1**

Defendants Pollard, Baenen, Bierke, Betts, Potter, Berge, Swiekatowski, Campbell, Liebergen, Schneiter, Ericksen, P. Huibregtse, Beerkircher, Ray, O'Donnell, Raemisch, Litscher, Mohr, Tom and Frank have devised a system to deprive the plaintiff of meaningful access to the Inmate Complaint Review System (ICRS). This includes, but is not limited to, refusing to process inmate complaints, preventing inmate complaints from receiving full review by classifying them as rejected complaints, and mislabeling the issues in inmate complaints. For example, on February 5, 2007, the defendants confiscated a group inmate complaint prepared by the plaintiff and put him in segregation as punishment for filing it.

The plaintiff further avers that these defendants refused to process his legal mail, denied him postage, and delayed the mailing of time-sensitive legal materials. For example, the defendants caused the plaintiff's appeal in *Jones-El v. Berge*, Case No. 02-3415 (7th Cir. July 9, 2004), to be untimely filed because it was not approved for mailing until the day after the filing deadline.

5

The plaintiff asserts that defendants Ericksen, Swiekatowski, Campbell, Lesatz, Stevens, Mohr, Baenen and Pollard have seized and held his legal materials on numerous occasions. The defendants have also prevented him from photocopying his handwritten legal materials. Further, they do not provide him with enough paper to hand-copy his documents.

**Claim 2**

The plaintiff has written various articles that are critical of the DOC's treatment of prisoners. Additionally, in 2000, he filed a class action lawsuit against the DOC. In response, the defendants have retaliated against the plaintiff by: (1) denying him access to the ICRS; (2) removing him from his prison job; (3) barring him from the law library; (4) preventing him from giving or receiving legal advice; (5) taking his personal property; (6) denying him access to certain publications; (7) refusing to deliver his mail; (8) slandering him; (9) transferring him to WSPF; (10) physically assaulting him; (11) issuing him false conduct reports; (12) banning him from seeing certain visitors; and (13) preventing him from practicing his religion.

**Claim 3**

All of the defendants have subjected the plaintiff and other similarly situated inmates to systemic deprivations that have rendered the conditions of confinement in DOC prisons unconstitutional. Specifically, the defendants have used the segregation units to house mentally ill inmates and they have placed a disproportionate number of DOC inmates on psychotropic medications. In a January, 2006, report, it was found that the DOC has a prisoner suicide rate nearly twice the national average and more than half of the suicides occur in control segregation or solitary confinement.

The defendants went on a taking and punishment binge in the 1990's, seizing personal property and denying privileges such as video non-contact visits. As a result, the DOC prison population nearly doubled between 1995 and 2000. The existing DOC institutions, however, were ill-equipped to accommodate this growing prisoner population.

The defendants have systematically denied DOC inmates adequate medical and psychological care. DOC inmates are subjected to inferior living conditions, such as contaminated water, constant illumination and extreme temperatures.

**Claim 4**

Defendants Berge, P. Huibregtse, Boughton, Ray, Schneiter, J. Huibregtse, S. Grondin, Mohr, Postl, Lesatz, Pollard, Baenen, Ericksen, Litshcer, O'Donnell, Raemisch, Betts, Westfield and Frank have repeatedly seized and destroyed the plaintiff's personal property while the underlying disciplinary matters were being resolved through ICRS. The defendants have a policy and practice of not delivering the plaintiff's mail. Furthermore, they do not provide the plaintiff with a notice of non-delivery of mail indicating that his mail that is not appropriate for delivery. The defendants have punished the plaintiff by sentencing him to the harshest conditions of confinement at WSPF without any finding of a rules violation. Moreover, the defendants pre-determined the plaintiff's placement in administrative confinement before a hearing was held.

The defendants have denied the plaintiff equal protection of the law by subjecting him to various conditions that other similarly situated inmates are not forced to endure. For example, the plaintiff is not permitted to turn out the light in his cell, he is subjected to 24-hour video surveillance and he is denied institution pay although he is on pay status.

7

**Claim 5**

The defendants have banned from DOC institutions the plaintiff's article, *Who Says Wisconsin Doesn't Have A Death Penalty?* The defendants seized his group inmate complaint and then issued a false statement that the complaint was a "hit list" against correctional officers. (Amend. Compl. at 23). The defendants have denied the plaintiff copies of various publications, including *Final Call* and *Vibe Magazine*.

The defendants at WSPF deny inmates receipt of any photocopied materials except transcripts from their own legal proceedings. Even though it has been declared unconstitutional, the defendants utilize a policy known as the "publisher's only rule," which prohibits the plaintiff from receiving any material that does not come directly from the publisher. *Id*. at 25-26. While the plaintiff is confined at WSPF, he is forbidden from taking general education classes and he is not allowed to purchase postage from the U.S. Post Office.

**Claim 6**

In 2002, 2006 and 2007, the defendants searched, seized and destroyed the plaintiff's personal property. For example, on October 5, 2006, defendants Ericksen, Pollard, Baenen, LeSatz, Campbell, Mohr, Raemisch and Frank took all of his property, including a television and his hygiene items. While some of the items were returned a few weeks later, some of the plaintiff's personal property was never returned.

**Claim 7**

The defendants conspired to excessively punish the plaintiff from May, 2001, to the present. For example, the defendants denied the plaintiff regular food, kept him in the worst of the worst living conditions, exposed him to constant illumination, denied him reading glasses, subjected him

8

to perceptual deprivation and forced him to wear handcuffs so tight that he suffered pain, bruising and a pinched nerve.

**Claim 8**

The defendants removed Diane K. Block and Peggy Swann from the plaintiff's visiting list at WSPF. Prior to their removal from the plaintiff's list, Ms. Block and Ms. Swan assisted the plaintiff with various legal, social and political activities.

**Claim 9**

The defendants have prevented the plaintiff from observing his religion. Specifically, he was prevented from participating in Ramadan in 2002 and 2003. He was deprived of Islamic publications and given inferior meals during Ramadan 2005. Furthermore, the plaintiff was prevented from possessing prayer oil and a prayer rug while in segregation in 2006 and 2007. The defendants have denied the plaintiff Halal meals. Finally, the defendants sponsor Christianity in a discriminatory manner by employing full time Christian Chaplains and using Christian chapels, which favors Christian inmates and oppresses Muslim inmates.

The plaintiff charges the defendants with violating the First, Fourth, Fifth, Eighth and Fourteenth Amendments as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. 2000cc(a)(1). As relief, he demands a jury trial, declaratory and injunctive relief, monetary damages and attorney's fees.

**B.   Analysis**

    **1.   First Amendment Claims**

The plaintiff avers that the defendants retaliated against him for complaining about the DOC. To comply with section 1915A, as with Fed. R. Civ. P. 12(b)(6), the plaintiff need specify only the

9

bare minimum facts necessary to notify the defendants and the court of the nature of his claim. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The "bare minimum" in a retaliation claim are the facts that inform the defendants of what the plaintiff did to provoke the alleged retaliation and what they did in response. *See Higgs*, 286 F.3d at 439; *Walker v. Thompson*, 288 F.3d 1005, 1012 (7th Cir. 2002) ("a plaintiff alleging retaliation must reference, at a minimum, the suit or grievance spawning the retaliation and the acts constituting the retaliatory conduct"). In the present case, the plaintiff's complaint meets the liberal notice pleading requirements. He has identified the retaliatory action (denial of use of the ICRS, removal from his prison job, etc.), named the defendants, and asserted a constitutionally-protected activity that spurred the retaliation (publication of various articles and the filing of complaints and lawsuits critical of the DOC). *See Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Thus, the plaintiff may proceed with a retaliation claim.

Next, the plaintiff asserts that the defendants have limited his access to certain publications, removed people from his visiting list, prevented him from practicing his religion, prevented him from taking general education classes, prohibited him from purchasing stamps from the U.S. Post Office and interfered with the delivery of his mail. In the prison context, claims concerning free speech, free exercise of religion, freedom of association and prison mail turn on the same question of reasonableness. When a prison regulation restricts a prisoner's First Amendment rights, it is valid only if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Kikumura v. Turner*, 28 F.3d 592, 598 (7th Cir. 1994). There are four factors that a court must considered in determining whether a prison regulation is constitutional: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative means of exercising the right that remain open to the inmate; (3) what impact

10

accommodation of the asserted right will have on guards and other inmates; and (4) whether there are obvious alternatives to the regulation that show that it is an exaggerated response to prison concerns. *Turner*, 482 U.S. at 89-91. While there may be legitimate governmental objectives underlying the defendants' actions, the court cannot at this time presume such a justification. Therefore, the plaintiff has stated free speech, freedom of religion, freedom of association and prison mail claims.

Next, the plaintiff avers that the defendants sponsor Christianity in a discriminatory manner. The Establishment Clause provides, in part, that "Congress shall make no law respecting an establishment of religion[.]" U.S. Const. amend. I, cl. 1. In evaluating an Establishment Clause claim, "[t]he touchstone for our analysis is the principle that the 'First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.'" *McCreary County v. ACLU*, 545 U.S. 844, 860 (2005)(quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). "When the government acts with the ostensible and predominant purpose of advancing religion, it violates that central Establishment Clause value of official religious neutrality, there being no neutrality when the government's ostensible object is to take sides." *Id.* Specifically, a government policy or practice violates the Establishment Clause if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, (3) it fosters an excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971); *see also McCreary*, 545 U.S. at 860 (reaffirming Lemon's "three familiar considerations for evaluating Establishment Clause claims."). Thus, the plaintiff may proceed on this claim.

### 2. Access to the Courts Claims

The plaintiff complains that the defendants have deprived him of meaningful access to the ICRS and hindered his ability to litigate his cases. It is well settled that prisoners have a

11

constitutional right to meaningful access to the courts to pursue post-conviction remedies and to challenge the conditions of his confinement. *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977). A complaint of denial of access to the courts requires not only that there have been interferences with the plaintiff's ability to communicate with a court, but also that the plaintiff has suffered "actual injury." *Lewis v. Casey*, 518 U.S. 343, 348-49 (1996). Actual injury includes, but is not necessarily limited to, prejudice to contemplated or existing litigation, such as a plaintiff's missing a filing deadline or being foreclosed from presenting a certain claim to the courts. *Id*. at 351. In addition, a claim for denial of access to the courts must involve intentional interference; negligent conduct by a government official is insufficient to support a claim under § 1983. *Harrell v. Cook*, 169 F.3d 428, 432 (7th Cir. 1999). Accordingly, the plaintiff has stated an access to the courts claim.

### 3. Eighth Amendment Claims

The plaintiff contends that the defendants subjected him to various unconstitutional conditions of confinement, including denial of regular food and constant illumination. To make out an Eighth Amendment claim based on prison conditions, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that deprives the inmate "the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). An environment of constant illumination may violate the Eighth Amendment if it causes sleep deprivation or leads to other serious physical or mental health problems. *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996)(24-hour illumination by fluorescent lights not dimmed at night); *King v. Frank*, 371 F. Supp.2d 977, 984-85 (W.D. Wis. May 26, 2005)(a condition of confinement such as constant illumination violates the Eighth Amendment if

12

it denies the inmate "the civilized measure of life's necessities."). Thus, the plaintiff may proceed on an Eighth Amendment conditions of confinement claim.[2]

Next, the plaintiff maintains that the defendants house mentally ill inmates in segregation and have subjected him and other similarly situated inmates to unconstitutional conditions of confinement and provided them with inferior medical and psychological care. He seeks to litigate this claim (Claim 3) on behalf of himself and other similarly situated inmates. However, as explained in this court's order dated June 26, 2007, the plaintiff, as a *pro se* litigant, is not permitted to litigate this claim on behalf of a class. Accordingly, the plaintiff may not proceed on an Eighth Amendment class action claim.

### 4. Due Process Claims

The plaintiff claims that, from May, 2001, to the present, the defendants have conspired to punish him by placing him in unusually harsh conditions of segregation without first finding him guilty of an offense (or finding him guilty of a fabricated conduct report). To establish a procedural due process violation, a prisoner must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself. *See Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). Generally, discipline in segregated confinement does not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. *Id*. at 485. However, an inmate may have a protected liberty interest in avoiding placement in

---

[2]It is unclear at this stage of the proceedings whether the plaintiff's Eighth Amendment conditions of confinement claim was previously litigated in *Jones-El v. Berge*, No. 00-C-421-C (W.D. Wis), his class action lawsuit against officials at WSPF. The plaintiff is advised that any claims that are subject to the consent decrees entered in that action may be barred under the doctrine of *res judicata*. *See United States v. Fisher*, 864 F.2d 434, 439 (7th Cir. 1988)(a consent decree is *res judicata* and thus bars a party from reopening the dispute by filing a new lawsuit).

13

segregation where it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. Thus, the plaintiff has stated a due process claim.

Next, the plaintiff claims that the defendants seized and destroyed his personal property. An individual is entitled to an opportunity for a hearing before the state permanently deprives him of his property. *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). However, a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the state fails to provide an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Wisconsin law provides tort remedies to individuals whose property has been converted or damaged by another. *See* Wis. Stat. §§ 893.34 and 893.51. If a deprivation of property did not occur as the result of some established state procedure (which the plaintiff does not allege) and state law provides an adequate post-deprivation remedy for redressing the missing property, due process has been satisfied. *Parratt*, 451 U.S. at 543-44; *see also Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (holding that Wisconsin's post-deprivation procedures are adequate, albeit in a different context). Thus, the plaintiff has failed to state a due process claim.

### 5. Equal Protection Claim

The plaintiff claims that the defendants have forced him to endure various conditions of confinement that other similarly situated inmates are not subjected to. To comply with equal protection, governmental entities are generally required to treat all similarly situated persons in a similar manner. *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Generally, "[t]o state an equal protection claim, a § 1983 plaintiff must allege that a state actor

14

purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir 1994). However, the United States Supreme Court has recognized a "class of one" equal protection claim, which arises without regard to protected-class status where the plaintiff "has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Thus, the plaintiff may proceed on an equal protection claim.

### 6. RLUIPA Claim

The plaintiff alleges that the defendants interfered with his ability to practice his religion, in violation of RLUIPA. "RLUIPA forbids (so far as bears on this case) prisons that receive federal funding to burden a prisoner's exercise of religion substantially unless the prison both has a compelling interest and employs the least restrictive means possible for protecting that interest." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003). The Wisconsin prison system receives federal funding. *Id*. at 1110 (citing *Charles v. Verhagen*, 348 F.3d 601, 606 (7th Cir. 2003)). "[T]o state a claim under RLUIPA a Wisconsin prisoner need allege only that the prison has substantially burdened a religious belief[.]" *Lindell*, 352 F.3d at 1110. Accordingly, the plaintiff may proceed on this claim.

### 7. Fourth Amendment Claim

The plaintiff claims that his personal items were illegally seized and searched. The Fourth Amendment "protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Patterson,* 65 F.3d 68, 70 (7th Cir. 1995). However, "[t]he Fourth Amendment proscription against unreasonable searches does

15

not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. at 526-30 (holding that a convicted prisoner has no reasonable expectation of privacy in his cell entitling him to Fourth Amendment protection against unreasonable searches). Thus, the plaintiff may not proceed on this claim.

### 8. Fifth Amendment Claim

The plaintiff avers that the defendants violated his rights under the Fifth Amendment. However, it is unclear which of the defendants' actions allegedly violated this provision. Further, the court must analyze the plaintiff's allegations under the most "explicit source[s] of constitutional protection," *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005), and in this case, the salient claims are retaliation, free speech, free association, freedom of religion, prison mail, establishment clause, conditions of confinement, access to the courts, due process segregation, RLUIPA and equal protection. Thus, the plaintiff may not proceed on a claim predicated on the Fifth Amendment.

### 9. Conspiracy Claim

The plaintiff alleges that, in various ways, the defendants conspired to deprive him of his constitutional rights under 42 U.S.C. § 1983, 1985 and 1986. It is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *see also Walker,* 288 F.3d at 1007. However, under the intracorporate conspiracy doctrine, a conspiracy cannot exist solely between members of the same entity. *Payton v. Rush-Presbyterian*, 184 F.3d 623, 632 (7th Cir. 1999); *see also Beese v. Todd,* 35 Fed. Appx. 241, *243 (7th Cir. Mar. 21, 2002)(holding that a conspiracy cannot exist solely between members of the DOC). Because the

16

complaint indicates that the defendants are all members of the same entity (the DOC) the plaintiff has failed to state a conspiracy claim.

In sum, the plaintiff has stated First Amendment retaliation, free speech, free association, freedom of religion, prison mail and establishment clause claims. He has also stated an Eighth Amendment conditions of confinement claim (as it applies to him only), an access to the courts claim, a due process segregation claim, an equal protection claim and a RLUIPA claim. However, the plaintiff may not proceed on the following: an Eighth Amendment class action claim, a due process personal property claim, a conspiracy claim under §§ 1983, 1985 and 1986, a Fourth Amendment illegal search claim or a Fifth Amendment claim. Consequently, the plaintiff's request to amend the complaint will be granted in part and denied in part as described herein.

As a final matter, the court is satisfied at this stage of the case that the plaintiff's claims against prison officials at WSPF and GBCI are sufficiently related to proceed as one action. However, should it become apparent that the allegations involving these institutions are unrelated, the court may sever the claims against WSPF and transfer that portion of his case to the Western District where WSPF is located and where he already has a case pending.

**THEREFORE, IT IS ORDERED** that the plaintiff's motion for extension of time (Docket # 5) is **GRANTED.**

**IT IS FURTHER ORDERED** that the plaintiff's request to amend the complaint is **GRANTED IN PART AND DENIED IN PART.**

**IT IS ORDERED** that the plaintiff shall serve the defendants pursuant to Federal Rule of Civil Procedure 4.

**IT IS ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated this   18th   day of October, 2007.

                                                    s/ William C. Griesbach
                                                    William C. Griesbach
                                                    United States District Judge