UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENNIS E. JONES-EL,

    Plaintiff,

Case No. 07-C-0504

WILLIAM POLLARD, et al.,

    Defendants.

**DECISION AND ORDER**

Plaintiff, Dennis E. Jones-El, filed this *pro se* civil rights complaint pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. In a decision and order dated September 22, 2008, I struck plaintiff's amended complaint. However, I afforded the plaintiff the opportunity to submit one final amended complaint. Before me now for screening is Jones-El's second amended complaint.[1]

**I. SCREENING**

Jones-El has paid the full filing fee. Regardless of the plaintiff's fee status, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or

---

[1] My September 22, 2008, decision and order provided that Jones-El's amended complaint must be filed on or before October 17, 2008. Jones-El's amended complaint was filed on October 21, 2008. Nonetheless, this pleading is timely because the "mailbox rule" states that papers filed by a prisoner are deemed filed on the date they are given to prison authorities for mailing. *See Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001). The proof of service attached to the amended complaint indicates the amended complaint was placed in the WSPF mailing system on October 17, 2008.

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for pro se prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Id.* at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he or she was deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon the plaintiff by a person acting under color of state law. *Gomez v.*

2

*Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. *See Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## II. COMPLAINT AVERMENTS

Jones-El's second amended complaint names the following defendants: William Pollard, Peter Ericksen, Mark Lesatz, Kevin Postl, Dan Westfield and Rick Raemisch. He names each of the defendants in both their individual and official capacities.

According to the complaint, the defendants imposed a policy that precludes Jones-El from sending or receiving legal documents (other than from an attorney or a court) unless they are sent to him from a party in a given case and/or he is sending them to a party in a given case (the "suppression policy"). Jones-El asserts that the suppression policy includes case law and documents that are a matter of public record that Jones-El could purchase from the court if he had the means or, in some instances, get from the prison library.

Specifically, Jones-El asserts that on May 10, 2006, the defendants refused to allow him to receive court papers from prisoner Lovell Day, who was incarcerated at Columbia Correctional Institution. Jones-El asserts that defendants Postl, Lesatz and Ericksen enforced the initial rejection of this mail, that defendant Pollard was responsible for the suppression policy at Green Bay Correctional Institution ("GBCI") and that defendants Westfield and Raemisch were responsible for the Department of Corrections ("DOC") policy.

Jones-El further asserts that on May 1, 2006, the defendants enforced the suppression policy to refuse "court papers" that private citizen Peggy Swan sent to Jones-El. He asserts that the

3

defendants also enforced the suppression policy six times in June and July 2003 when they refused "court papers" sent to Jones-El by private citizen Diane Block. In both of these instances, Jones-El alleges that Defendants Postl, Lesatz and Ericksen enforced the initial rejection and that Defendants Pollard, Westfield and Raemisch "finalized the rejection and enforcement of said policy" and were responsible for the policy.

Jones-El avers that the defendants refused, on January 12, 2006, to deliver court papers sent to Jones-El by prisoner Cedric Robinson, who was at Wisconsin Secure Program Facility ("WSPF"), until Jones-El showed proof that a party in the case sought his legal assistance. Jones-El asserts that the papers were rejected by Defendants Postl, Lesatz and Ericksen to enforce the policy of Defendants Pollard, Westfield and Raemisch.

Jones-El alleges that, on nine separate occasions, the defendants rejected mail he received containing copies of an article he wrote. He avers that this was due to the content of his article, entitled "Who Says Wisconsin Doesn't Have The Death Penalty?" According to Jones-El, his article was eventually banned throughout the Department of Corrections. Jones-El believes that the defendants considered each copy of his article part of the forbidden Prisoner Action Coalition ("PAC") Newsletter. He asserts that he was being sent copies of the original article with its press release rather than a copy of the page from the PAC newsletter.

Jones-El also asserts that he is a freelance writer and that DOC's rules explicitly permit him to have his writings published and to earn profit therefrom. However, Jones-El alleges that the defendants prevented him from distributing his article and a related press release, which he planned to use to market to the mainstream media. Jones-El desired to reach a broader segment of the public than possible with the PAC's newsletter; he also wanted to halt death penalty legislation in

4

Wisconsin. Jones-El asserts that he was deprived of the market value of his article, as well as his right to seek and have it released to the mainstream media. Jones-El contends that he was unable to market his article without the copies and press releases due to newspaper and magazine requirements that submissions come directly from the author. Jones-El alleges his marketing was further limited because he was unable to call the publications directly because they do not accept collects calls and he could not call out any other way.

Jones-El alleges that the suppression policy and its enforcement, discussed above, constituted retaliation against Jones-El "in order to kill his ability to network, spread his ideas, assist (or receive assistance) in litigation, and to scare, frighten and incriminate those who corresponded with him . . . ."

Jones-El further contends that his article was a petition to the Wisconsin state legislature to vote against proposed death penalty legislation and to increase regulation and oversight of the Wisconsin DOC and prison conditions. The article also "called on all readers to join in petitioning their respective state representatives and senators to demand accountability." Jones-El asserts that the defendants' enforcement of their "suppression policy" against Jones-El's article also violated his right to petition.

Finally, Jones-El asserts that the defendants had a policy of not providing notice of mail they censor and, in each instance related to Jones-El's article, he only found out the mail had been rejected later, by the sender telling him that was what the defendants were rejecting "because defendants deliberately and deceptively omitted such information from the mail rejection forms they provided to Jones-El." He does not deny he received the forms but, rather, that the rejected mail was not identified with specificity.

5

### III. LEGAL ANALYSIS

Jones-El asserts that the defendants violated his First Amendment rights to free speech, freedom of the press and to petition the government. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. CONST. amend. I. In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court recognized that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment. At the same time, the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. *Id.* at 84-85. Jones-El's allegations in his second amended complaint implicate his First Amendment rights and assert that the defendants infringed upon those rights. As such, Jones-El may proceed on his First Amendment claims.

Jones-El also alleges that the defendants have a policy of using exaggerated security responses and concerns to deliberately suppress speech with which they disagree or which is unfavorable to the defendants and the Department of Corrections. Restrictive prison regulations are permissible if they are "reasonably related" to legitimate penological interests and are not an "exaggerated response" to such objectives. *Turner*, 482 U.S. at 87. *Turner* sets forth four factors to be considered in determining the reasonableness of the regulation at issue: (1) is there a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it; (2) are there "alternative means of exercising the right that remain open to prison inmates;" (3) what "impact" will "accommodations of the asserted constitutional right . . . have on guards and other inmates, and on the allocation of prison resources generally;" and (4) are

6

"ready alternatives" for furthering the governmental interest available? *Id.* at 89-90. At this stage in the litigation, I will allow Jones-El to proceed on his claim challenging the defendants'"suppression policy.

Further, Jones-El asserts that the suppression policy was enforced against him, thereby violating his First Amendment rights, in retaliation for his past and continued exercise of his constitutional rights. Jones-El could succeed on a retaliation claim even if the defendants' actions did not violate the Constitution. *See Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). The crux of his claim is that the defendants violated his First Amendment rights by retaliating against him for his protected speech activities. *Id.* A prisoner's retaliation claim is subject to a liberal notice pleading standard; to comply with 1915A, as with Fed. R. Civ. P. 12(b)(6), the complaint need specify only the bare minimum facts necessary to notify the defendants and the court of the nature of the claims. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The "bare minimum" in a retaliation claim are the facts that would apprise the defendants of what the plaintiff did to provoke the alleged retaliation and what they did in response. *Id.*; *Walker v. Thompson*, 288 F.3d 1005, 1012 (7th Cir. 2002) ("a plaintiff alleging retaliation must reference, at a minimum, the suit or grievance spawning the retaliation and the acts constituting the retaliatory conduct"). Jones-El has identified his published article and his prior involvement in litigation, and he asserts that the defendants' enforcement of a suppression policy, as described in his second amended complaint, constitute retaliatory conduct.

Finally, Jones-El alleges that his due process rights were violated when the defendants did not inform him of the contents of the mail they refused to accept. The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or

7

property, without due process of law." U.S. CONST. amend. XIV, § 1. "Accordingly, the procedural protections of the Due Process Clause will only be triggered if state action implicates a constitutionally protected interest in life, liberty, or property." *Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005). It follows that Jones-El cannot under § 1983 complain of procedural due process violations unless the state has first deprived him of such a constitutionally protected interest. *Id.* Even if the defendants failed to give Jones-El notice of the censored mail, Jones-El was not deprived of a constitutionally protected interest in life, liberty, or property. Jones-El does not set forth a due process claim.

Jones-El may proceed on freedom of speech, freedom of press and right to petition claims under the First Amendment, a retaliation claim, and a claim challenging what the plaintiff describes as the suppression policy. *See* 28 U.S.C. § 1915A(b).

### IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that Mark Lesatz and Kevin Postl shall be **REINSTATED** as defendants in this action.

**IT IS FURTHER ORDERED** that the following defendants shall be **DISMISSED** as parties in this action: Michael Baenen, Lt M Delvaux, Kathleen Bierke, Lt Swiekatowski, Lt Campbell, D Stevens, Michael Mohr, Richard Schneiter, Peter Huibregtse, Gary Boughton, Lt Tom, Captain Mason, T Lansing, Ellen Ray, J. Huibregtse, Matthew Frank, John Bett, Captain Brandt, Lt Boisen, Ron Edwards, and Unknown, John and Jane Doe - PRC Members.

**IT IS FURTHER ORDERED** that the plaintiff serve a copy of the complaint, a waiver of service form, and/or summons, and a copy of this order upon the following defendants: William

8

Pollard, Peter Ericksen, Mark Lesatz, Kevin Postl, Dan Westfield, and Rick Raemisch.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). The plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated this   19th   day of November, 2008.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge